IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENNIS FULTON,

                Petitioner,

    v.

BARRY SMITH, et al.,

                Respondents.

CIVIL ACTION
NO. 20-3916

**Slomsky, J.**                                                   **October 16, 2024**

## Contents

**I.   INTRODUCTION** ................................................................................ 3

**II.  BACKGROUND** ................................................................................ 3

**III. STANDARDS OF REVIEW** ........................................................... 9

  A.     Magistrate Report and Recommendation ................................... 9

  B.     Merits Review ........................................................................... 10

  C.     Exhaustion and Procedural Default ........................................... 11

  D.     Ineffective Assistance of Counsel ............................................ 13

  E.     Brady Violations ....................................................................... 15

**IV.  ANALYSIS** ...................................................................................... 16

  A.  Petitioner's Claims of Ineffective Assistance of Counsel ............... 16

     1. Petitioner's Ineffective Assistance of PCRA Counsel
       Claims are Time-barred ................................................................. 16

2. Petitioner's Ineffective Assistance of Trial Counsel Claims
are Time-barred and Meritless ................................................... 19

   i.  Claims Four and Seven: The Firearm and Cellphone ............................ 19

   ii.  Claim Five: Witness Statements ............................................. 24

   iii. Claim Six: Speedy Trial ..................................................... 25

   iv. Claim Nine: Pre-Sentencing Investigation Report .............................. 26

B.  Petitioner's Claims of Unconstitutional Suppression of Evidence
and <u>Brady</u> Violations are also Meritless. .......................................... 27

   i. Claim Three: <u>Brady</u> Claim Relating to Wilkerson's Wallet ..................... 27

   ii. Claim Eight: <u>Brady</u> Claim Relating to Aisha Evan's Plea Agreement ..................... 29

C.  Petitioner's Claim That He is Entitled to a Certificate
of Appealability is Meritless ................................................... 30

**V.  CONCLUSION** ............................................................. 31

## I.      INTRODUCTION

Before the Court is a pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by Dennis Fulton ("Petitioner"), a prisoner incarcerated at the State Correctional Institution in Houtzdale, Pennsylvania.  (Doc. No. 1.)  On March 7, 2024, United States Magistrate Judge Scott W. Reid issued a Report and Recommendation ("R&R"), recommending that the Petition be denied and that a certificate of appealability not be issued.  (Doc. No. 46.)  Petitioner has filed Objections to the R&R.  (Doc. No. 48.)

For reasons stated below, the Court will approve and adopt the R&R (Doc. No. 46) and deny the Petition (Doc. No. 1).[1]

## II.     BACKGROUND

On November 6, 2015, following a jury trial in the Court of Common Pleas of Philadelphia County, Petitioner was convicted of murder in the first-degree, robbery, and firearms offenses. (Doc. No. 1 at 4.)  He was sentenced on the same day to the mandatory life sentence for first-degree murder.  Id.  The facts underlying these charges are summarized in the Report and Recommendation as follows:

> Appellant was arrested and charged with the crimes identified above, all in relation to the shooting death of 61-year-old Rudolph Wilkerson, a "hack driver" who provided unlicensed taxi rides to Appellant and several other individuals who lived in Appellant's neighborhood. Wilkerson's body was discovered shortly after midnight on June 19, 2010, in the roadway near East Wolf Street in a commercial area of Philadelphia.  Wilkerson's vehicle was observed shortly thereafter and secured by police later that morning.  At Appellant's trial, significant circumstantial

---

[1]   For purposes of this Opinion, the Court has considered the Petition for a Writ of Habeas Corpus (Doc. No. 1), the Response in Opposition to the Petition (Doc. No. 45), the Report and Recommendation (Doc. No. 46), the Objections to the Report and Recommendation (Doc. No. 48), and the relevant state record.

evidence was presented, including telephone records revealing several telephone calls from Appellant's cell phone to Wilkerson's cell phone shortly before the murder and testimony indicating that in 2008, Aisha Evans, the mother of Appellant's two children, purchased a Smith and Wesson revolver – consistent with the murder weapon – for Appellant and did so in her name because he was ineligible to be licensed. Evans and a second witness indicated that Appellant confessed to the murder, telling Evans he needed money, and telling another witness that he was angry because Wilkerson "disrespected" Evans.

Aside from the evidence of Fulton's confessions to Evans and to his friend Tasmin Willis (the "second witness" referred to by the Superior Court), the prosecution presented other incriminating circumstantial evidence. Roger Aye testified that he and Wilkerson were together in Wilkerson's apartment on the evening of the murder when Wilkerson received a phone call asking for a taxi ride. Commonwealth v. Fulton, Trial Transcript of November 4, 2015 at 80:22- 25. Wilkerson told Ayes he had to pick up someone he referred to as "Young Boy" at 6th and Emily Streets. Id. at 81:13-20. Fulton lived at 604 Emily Street. Trial Transcript of November 3, 2015 at 104:21-25 (Testimony of Detective Kenneth Rossiter). Wilkerson left the house, telling Aye he would be right back, but he never returned. Id. at 83:9-12.

Telephone records revealed that the last four calls to Wilkerson's phone were from Fulton's phone. Trial Transcript of November 3, 2015, at 99-103 (Testimony of Detective Rossiter). The first three calls were *69 calls which did not reveal the number of the caller, and they were not picked up or returned. Id. The fourth call was made shortly after 11:30 p.m., without using *69, and was promptly returned. Id. In a statement to the police, Fulton said that the calls were made by a friend, Shaku Maven, who was using his phone. Id. at 110. Maven, however, testified at Fulton's trial that he was not in Philadelphia at that time, and did not make the calls. Id. at 145:1-16.

Another friend of Fulton's, Norman Whitest, told police that Fulton told him that "the police knew he was the last one to call Rudy and the last one in the car," although he disavowed the statement when it was read back to him at trial. Id. at 173:15-20. The prosecution also presented as a witness Frank Johnson, Jr. He testified that Wilkerson and Aye purchased heroin from him on the afternoon before Wilkerson was killed. Id. at 11:18-24. Subsequently, Aye was questioned about a statement he made to police. Although Aye denied saying so, the jury heard that he told police that Wilkerson sold heroin, and also that he heard Wilkerson was killed over "30 bundles" of heroin. Trial Transcript of November 4, 2015, at 102:5-22.

The gun Evans purchased for Fulton, which the police recovered three years after Wilkerson's murder from a teenager named Carlton Wright and identified by its serial number, was admitted into evidence. Id. at 129:5-23; 141:4-142:20 (Testimony of Officer Ronald Weitman). The police were not able to determine whether this was the same gun from which the bullets were fired which killed Wilkerson, because it was corroded and in poor condition, but it did fire .38 Special bullets such as those recovered from Wilkerson's body. Id. at 132:24- 134:23.

Fulton did not present any defense witnesses. Prior to jury selection, the trial judge asked: "So my understanding is that you have no witnesses to present other than possibly yourself, is that correct?" Trial Transcript, November 2, 2015, at 13:6-9. Fulton responded: "Yes." Id. at 13:10. The trial judge than said: "All right. Because now is the time if there were any problems with locating witnesses, whatever the assistance the Court can give, the Court can give you now because your witnesses wouldn't have to be here until Thursday." Id. at 13:11-15. Fulton did not respond to this.

In his closing argument, Fulton's defense attorney argued in part that Wilkerson's killing was probably connected to his heroin-trafficking relationship with Frank Johnson, Jr. Trial Transcript, November 5, 2015 at 139:11-19; 141:4-8. He pointed out that Wilkerson's wallet was still on his body when first responders arrived and removed it to determine his identity, and that the wallet was lost by police. Id. at 136:13-137:6; referring to the testimony of Police Officer Brian Egrie, at Trial Transcript, November 2, 2015, at 63:24-64:1. The fact that Wilkerson still had his wallet would undermine robbery as a motive for killing him, and because the police lost the wallet, it was impossible to say whether it still contained money.

The prosecutor countered that it was unlikely that Wilkerson kept all of his taxi driving proceeds in his wallet, much less any drug-sale proceeds, and that Wilkerson might also have been robbed of the "30 packs of heroin" which the evidence indicated had been in his car. Trial Transcript, November 5, 2015, at 161-163.

Also significant is the medical testimony from Gary Collins, M.D. He stated that Wilkerson was shot twice in the back of the head, once in the face, and once in the chest. Trial Transcript, November 5, 2015, at 12:2-22:14. Dr. Collins opined that the shot to the chest was fired when the gun was touching Wilkerson's shirt. Id. at 20:25-22:5.

As noted above, because Fulton was convicted of murder in the first degree, he was sentenced immediately after trial to the mandatory life sentence, and consecutive sentences on the other offenses. Trial Transcript, November 6, 2015, at 27:3-28:19. Fulton appealed his conviction to the Pennsylvania Superior Court, arguing that the evidence at trial was insufficient to support the verdicts, and that the verdicts were against the weight of the evidence. Commonwealth v. Fulton, supra, at *1. However, his conviction was affirmed on December 13, 2016. Id. On May 15, 2017, the Pennsylvania Supreme Court denied his petition for review. 169 A.3d 523 (Pa.) (table).

On January 29, 2018, Fulton filed a timely pro se petition under Pennsylvania's Post-Conviction Relief Act, 42 Pa. C.S.A. § 9541, et seq. Commonwealth v. Fulton, 2913 EDA 2018, 2019 WL 3307920 at *3 (Pa. Super. July 23, 2019). The PCRA court appointed James Berardinelli, Esq., as counsel, and he filed an amended petition in which he argued that trial counsel was ineffective in failing to object to the admission of the cell phone records. Id.

After the PCRA court issued a notice of intent to dismiss, counsel amended the petition to allege that trial counsel was also ineffective for failing to call as witnesses Fulton's mother, Marcia Fulton; Derrick Whitest; Norman Whitest; Aisha Evans; Edwin Castro; and Tasha James.  Id.   However, PCRA counsel then filed a supplemental brief which essentially stated that the additional claims lacked merit since (a) he had spoken to trial counsel, who denied that he was provided with the names of any witnesses before trial; (b) Marcia Fulton indicated that she would testify that Aisha Evans bought the supposed murder weapon for her own use, but this would have been irrelevant, since Fulton could still have accessed the gun; (c) an investigator repeatedly tried to interview the remaining witnesses, but never received a response; and, finally, Aisha Evans and Norman Whitest did testify at Fulton's trial.  Id. at *4.

The PCRA court scheduled a hearing for September 27, 2018, based on PCRA counsel's advice that Fulton wished to proceed pro se.  On the day before the hearing, another attorney – Lauren Wimmer, Esq. – entered her appearance, even though Berardinelli had not yet moved to withdraw.  On the morning of September 27, 2018, however, the PCRA court dismissed Fulton's PCRA petition, dismissed Berardinelli as counsel, and appointed Wimmer.  Id. at *4

Later that morning, at a separate hearing, the PCRA court addressed Fulton's request to proceed pro se on appeal.  Id.  Wimmer appeared and asked for a 45-day extension of time in which to determine whether she would file an amended PCRA petition for Fulton, since she had only been contacted by Fulton's mother the previous night.  Id.  The judge, however, advised Wimmer that, since she was not yet familiar with the case and could not therefore argue for reconsideration of the dismissal at that time, the dismissal would stand.

Fulton appealed the dismissal of his PCRA petition.  Id.  He argued in his appeal that the PCRA court erred in denying Wimmer's request for a 45-day extension of time to file an amended petition, and that it erred in denying his PCRA petition without an evidentiary hearing.  Id.  The Superior Court denied relief on July 23, 2019, finding as to the first claim that Wimmer "declined to argue that the PCRA court should reconsider its dismissal."  Id. at *6.  As to the second claim, the Superior Court ruled that the PCRA court did not abuse its discretion, since Fulton "failed to establish that trial counsel was aware of any of the … witnesses," other than Evans and Norman Whitest, who actually testified at trial.  Id. at *7.  Again, the Pennsylvania Supreme Court denied allowance of appeal.  224 A.3d 363 (Pa. Feb. 4, 2020) (table).

On August 10, 2020, Fulton filed a second PCRA petition.  Commonwealth v. Fulton, 283 A.3d 345 (Table), 2022 WL 2452260 at *4 (Pa. Super. July 6, 2022).  Aside from arguing that his untimeliness should be excused, he raised numerous claims which the Pennsylvania Superior Court characterized as the following: (1) the trial court abused its discretion in failing to order a Pre-Sentence Investigation

and in denying Wimmer's request to amend the first PCRA petition; (2) trial counsel was ineffective for failing to (a) seek dismissal on the basis of a speedy trial violation; (b) file certain motions to suppress evidence; (c) present Marcia Fulton, Derrick and Norman Whitest, Evans, Castro, and James as defense witnesses; and (d) raise a claim under <u>Brady v. Maryland</u>, 373 U.S. 63 (1963), based on the missing wallet; and (3) PCRA counsel Berardinelli was ineffective in failing to preserve the claims of trial counsel's ineffectiveness.  <u>Id.</u> at *5.

Two days later, on August 12, 2020, Fulton filed the present petition for habeas corpus relief. On October 8, 2020, the PCRA court dismissed Fulton's second PCRA petition as untimely, finding that the exceptions to the PCRA statute of limitations did not apply.  <u>Id.</u> at *4.  On August 4, 2021, the District Court placed this petition in suspense pending the disposition of Fuller's appeal of the dismissal of his second PCRA petition in the Pennsylvania courts.  The Pennsylvania Superior Court affirmed the PCRA court's dismissal of Fulton's petition on July 6, 2022.  <u>Id.</u> On May 23, 2023, the Pennsylvania Supreme Court denied Fulton's Petition for Allowance of Appeal. 298 A.3d 382 (Table).  This Court removed the case from suspense on July 31, 2023.

(Doc. No. 46 at 1-7.)

In his § 2254 habeas petition, Petitioner raised the following grounds for relief:

(1) The evidence was insufficient to sustain the verdicts against him;

(2) The verdicts were against the weight of the evidence;

(3) The prosecution committed a <u>Brady</u> violation with regard to Wilkerson's missing wallet;

(4) Trial counsel was ineffective in failing to file a suppression motion concerning the admission in evidence of the gun purported to be the murder weapon, and in failing to call witnesses to testify that Fulton's gun was stolen before Wilkerson's murder;

(5) Trial counsel was ineffective in failing to seek suppression of the statements witnesses made to police which they recanted at trial;

(5.5) Witness Tasmin Willis had an "agreement for his testimony," which the prosecution failed to disclose in violation of <u>Brady</u>;

(6) Trial counsel was ineffective for failing to seek dismissal of the charges for violation of the right to a speedy trial;

(7) Trial and appellate counsel were ineffective in all the ways specified above, and also for failing to communicate with Fulton or investigate his case, and in failing to call Marcia Fulton, Alexis Foster, or Norman or Derrick Whitest to testify that his phone was "everybody's phone," and not used solely by him;

(8) Aisha Evans also had an undisclosed agreement with the prosecution in exchange for her testimony, in violation of Brady; and

(9) The trial court abused its discretion in failing to have a pre-sentence report prepared, and counsel was ineffective for failing to request one.

(See Doc. No. 1.)

In his R&R, Judge Reid recommended that the Petition be denied. (Doc. No. 46 at 1.) On March 20, 2024, Petitioner filed Objections to the R&R. (Doc. No. 48.) The Objections to the R&R assert the following issues:

1. Fulton's Petition for Allowance of Appeal to the State's Supreme Court Tolled the Limitations Period of the Antiterrorism and Effective Death Penalty Act ("AEDPA");

2. Fulton's Claim of Unconstitutionally Suppressed Evidence and Use of Perjured Testimony is Supported by Substantial Factual and Circumstantial Evidence; and

3. Fulton is Entitled to a Certificate of Appealability.

(Doc. No. 48 at 2-9.)

For reasons discussed below, the Court will approve and adopt the R&R (Doc. No. 46) and will deny the Petition (Doc. No. 1).

**III.    STANDARDS OF REVIEW**

### A.    Magistrate Report and Recommendation

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.  See § 636(b)(1)(B); E.D. PA. CIV. R. 72.1.  Any party may file objections in response to the magistrate judge's report and recommendation.  § 636(b)(1)(C). Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge with further instructions." (Id.)  "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  Henderson v. Carlson, 812 F.2d 784, 878 (3d Cir. 1987).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation.  E.D. PA. CIV. R. 72.1.  Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012).  Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." § 636(b)(1)(C).  De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter.  Salve Regina Coll. v. Russell, 499 U.S. 255, 238 (1991).  "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge],

in the exercise of sound discretion, deem[s] proper." <u>Owens v. Beard</u>, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing <u>United States v. Raddatz</u>, 447 U.S. 667, 676 (1980)).

### B.    Merits Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review will only be granted if: (1) the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the court's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1)–(2).  Determinations of factual issues made by a state court "are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence." <u>Werts v. Vaughn</u>, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340-41 (2003). The United States Supreme Court has defined clearly established law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Lockyear v. Andrade</u>, 538 U.S. 63, 71-72 (2003).

A state court ruling is "contrary to" clearly established federal law for the purposes of § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).   The Supreme Court has explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413–13 (2000).

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule from Supreme Court decisions, but "unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08.  The state court's ruling must be "objectively unreasonable, not merely wrong." Virginia v. LeBlanc, 137 S.Ct. 1726, 1728 (2017) (internal citation omitted).   As the Third Circuit has noted, "an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless the court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable."   Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411).  Deference is given to state court rulings, and the application of the "contrary to" and "unreasonable application clauses" has proven to be "difficult to meet."   Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

This burden is substantial. And under the AEDPA, review of state court legal and factual determinations is highly deferential.  See Palmer v. Hendricks, 592 U.S. 386, 392 (3d Cir. 2010) ("AEDPA requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations.")  If a state court did not adjudicate a claim on the merits, however, the deferential standard of the AEDPA does not apply.  Id.  Rather, in such cases, "the federal habeas corpus court must conduct a de novo review over pure legal questions and mixed questions of law and fact . . . ." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

## C.    Exhaustion and Procedural Default

For a petitioner's habeas claim to be considered by a federal court, the petitioner must meet the exhaustion requirement prescribed by Section 2254(b).  This provision requires a petitioner "give the state courts one full opportunity" to cure the Petitioner's alleged constitutional violations.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  Exhaustion requires the petitioner to present to the state courts the same legal theory applied to the same facts.  Landano v. Rafferty, 897 F.2d 661, 669 (3d Cir. 1990).  A petitioner bears the burden of demonstrating that he has exhausted each claim in each level of the state judicial system.  Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  It also requires the petitioner to preserve each claim at the state appellate level.  See Holloway v. Horn, 355 F.3d 707, 714. (3d Cir. 2004) (exhaustion satisfied only if claim fairly presented at each level of the state court system) (citing O'Sullivan, 526 U.S. at 844–45).

Moreover, "a habeas claim is ... considered procedurally defaulted when a state court relies on or would rely on 'a state law ground that is independent of the federal question and adequate to support the judgment.'"  Id. at 6 (citing Beard v. Kindler, 668 U.S. 53, 53 (2009)).  The Third Circuit has held that the Pennsylvania Post Conviction Relief Act's ("PCRA") one year statute of limitations is one such "independent and adequate" state law ground upon which habeas relief may be denied.  See Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002).

There are, however, exceptions that a petitioner may assert to overcome a procedurally defaulted claim, such as demonstrating: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Under the first prong of the exception, "cause" is demonstrated by "some objective factor external to the defense [that] impeded counsel's efforts to comply with the state's procedural rule."  Id.  Under the second prong, a 'fundamental miscarriage of justice' is demonstrated by a showing of actual innocence, which means factual innocence, not mere legal insufficiency.  Schlup v. Delo, 513 U.S. 298, 324-26 (1995)).  And a petitioner may support a showing of "actual innocence" through his "allegations of constitutional error with new reliable evidence—whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324.

### D.      Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must satisfy a two-prong test as set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, petitioner's counsel is presumed effective unless petitioner can show that: (1) counsel's "representation fell below an objective standard of reasonableness;" and (2) counsel's deficient performance prejudiced the petitioner. Id. at 687–96. When assessing counsel's reasonableness, the Supreme Court has recognized that "advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." Id. at 681. Both prongs of the Strickland test must be met to show a "reasonable probability that, but for [his counsel's] unprofessional errors, the result of the proceeding would have been different." Id. at 687–88, 694. "Judicial scrutiny of counsel's performance must be highly deferential . . . [and a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Additionally, when a state court has already rejected an ineffective assistance of counsel claim, a federal court must defer to the previous decision, pursuant to 28 U.S.C. § 2254(d)(1).

> If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). Where the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.

Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (per curiam) (citations omitted).

Although federal courts generally may not grant habeas corpus petitions unless "the applicant has exhausted the remedies available in the courts of the State," see 28 U.S.C. § 2254(b)(1)(A), "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, . . . counsel in that proceeding was ineffective." Martinez v. Ryan, 566 U.S. 1, 17 (2012). In other words, a court can analyze a habeas petitioner's ineffective assistance of counsel claim "only if there is sufficient cause to do so under Martinez . . . ." Gaines v. Superintendent Benner Twp. SCI, 33 F.4th 705, 710 (3d Cir. 2022) (citing Martinez, 566 U.S. at 14). As the court in Gaines explained:

> Sufficient cause exists [under Martinez] to review a defaulted claim for ineffective assistance of counsel if the petitioner shows that: (1) "the default was caused by ineffective assistance of post-conviction counsel"; (2) "in the initial-review collateral proceeding"; and (3) "the underlying claim of trial counsel ineffectiveness is substantial." Preston v. Superintendent Graterford SCI, 902 F.3d 365, 376 (3d Cir. 2018) (internal quotation marks omitted) (quoting Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014)).

Id. at 710.

A claim is "substantial" if it "has some merit." Martinez, 566 U.S. at 14 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 481 (2000)). If any of the three prongs are not met, then there is not sufficient cause for a district court to review the ineffective assistance of counsel claim presented in the habeas corpus petition.

However, if the underlying ineffective assistance of counsel claim fails on the merits, there is no need to consider whether the three Martinez prongs are me. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of

14

the applicant to exhaust the remedies available in the courts of the State."); see also Roman v. Diguglielmo, 675 F.3d 204, 209 (3d Cir. 2012) ("Because we will deny [petitioner's] claims on the merits, we need not address the issue of exhaustion in this case.")

###   E.   **Brady** Violation

In the landmark case Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court held that "[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. To establish a Brady violation, a petitioner must demonstrate: (i) evidence was suppressed by the state, either willfully or inadvertently; (ii) the evidence is favorable to the accused, either because it is exculpatory or impeaching; and (iii) the evidence was material to the outcome of the case. Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Evidence is Brady material when it places the "whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995). Further, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," then the evidence must have been disclosed. Strickler, 527 U.S. at 280 (citation omitted). In order for evidence to be material, it is not necessary that the evidence be established by a preponderance that its disclosure would have resulted in an acquittal. Kyles, 514 U.S. at 434. Rather, in determining materiality, the assessment of the omitted evidence's impact must take account of the cumulative effect of the suppressed evidence in light of all the other evidence, not merely the value of the suppressed evidence standing alone. Id. at 436-37.

IV.     **ANALYSIS**

    A.     **Petitioner's Claims of Ineffective Assistance of Counsel**

        1.     **Petitioner's Ineffective Assistance of PCRA Counsel
Claims are Time-barred**

First, Petitioner argues that his appeal to the Pennsylvania Supreme Court tolled the limitations period of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Id. at 2.

A Post Conviction Relief Act ("PCRA") petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final."  42 Pa.C.S. § 9545(b)(1).  A judgment becomes final at the conclusion of direct review, "including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."  42 Pa.C.S. § 9545(b)(3).  To overcome the one-year time bar, Petitioner has the burden to prove that a timeliness exception applies.  Maysonet v. Ferguson, No. CV 18-2260, 2019 WL 528905, at *9 (E.D. Pa. Feb. 11, 2019).  The timeliness exceptions include:

    (i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

    (ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

    (iii)   the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

As described, supra, under the AEDPA, if an issue raised in a federal habeas petition was adjudicated on the merits in the state courts, a federal court may not grant habeas relief unless the

16

adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. <u>See</u> 28 U.S.C. §2254(d).

In Fulton's Second PCRA Petition, the Superior Court found:

> In this case, Fulton's judgment of sentence became final on August 14, 2017, when his time to file a petition for writ of certiorari with the Supreme Court of the United States expired. <u>See</u> U.S.S.Ct.R. 13(1). This PCRA petition, Fulton's second, was not filed until August 10, 2020, making it facially untimely.

<u>Commonwealth v. Fulton</u>, 2022 WL 2452260, at *5 (Pa. Super. Ct. 2022), <u>reargument denied</u> (Oct. 19, 2022), <u>appeal denied</u>, 298 A.3d 382 (Pa. 2023).

Petitioner cites <u>Commonwealth v. Bradley</u>, 261 A.3d 381 (Pa. 2021), arguing he was unable to assert ineffective assistance of his PCRA counsel before the PCRA court because "the alleged ineffectiveness [was] playing out as that proceeding occur[ed], and ineffectiveness cannot be identified until the proceeding ha[d] concluded." <u>Id.</u> at 3. In <u>Bradley</u>, the Supreme Court of Pennsylvania held that a petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting <u>pro se</u>, raise claims of ineffective assistance of PCRA counsel at the first opportunity to do so, even if it is on appeal. <u>Bradley</u>, 261 A.3d at 401. However, <u>Bradley</u> does not apply in this case because it does not overcome a procedurally defaulted ineffective assistance of counsel claim. <u>See</u> <u>Williams v. Armel</u>, No. 2:19-CV-0141, 2023 WL 9183782, at *n.5 (W.D. Pa. June 8, 2023). Fulton first raised the issue of ineffective assistance of PCRA counsel in his Second PCRA Petition on August 10, 2020. <u>Bradley</u> was not yet decided at the time of that petition, nor was it in place at the time of the PCRA's Court's denial of that petition (October 8, 2020.) Therefore, his second petition did not toll the statute of limitations because the state courts determined that Petitioner did not timely file his petition and it did not meet any of the exceptions

17

to the time bar set forth in 42 Pa. C.S. § 9545(b)(1)(i)–(iii).  See Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and [petitioner] is not entitled to statutory tolling.")

As the court explained in Armel, "Bradley is not applicable because (i) the procedural rule announced in Bradley did not exist at the time [defendant] litigated his claims in state court; (ii) the Supreme Court of Pennsylvania has not announced that the procedural rule in Bradley should be applied retroactively; and (iii) the procedural rule announced in Bradley does not alter the method of raising claims of ineffective assistance of trial or direct appeal counsel – such claims still must be raised on collateral review."  Armel, 2023 WL 9183782, at *n.5 (citations omitted.) See also Moses v. Krasner, No. 5:21-CV-5466, 2023 WL 394908, at *4 (E.D. Pa. Jan. 25, 2023) ("However, Bradley was not the law at the time of [defendant]'s PCRA appeal; it was decided in October, 2021.  As a result, this Court cannot look to Bradley for help to determine how the PCRA court may have addressed the IAC claims; instead, it must rely on case law that existed at the time of the alleged default.")

Moreover, a claim of ineffective assistance of state post-conviction counsel is not cognizable on federal habeas review.  Burns v. Hainsworth, No. 4:23-CV-01158, 2024 WL 3678795, at *5 (M.D. Pa. Aug. 6, 2024); see also Lewis v. Superintendent Joseph Terra, et al, No. 21-CV-4176, 2024 WL 4198162, at *14 (E.D. Pa. June 10, 2024), report and recommendation adopted sub nom. Lewis v. Dist. Att'y of Cnty. of Chester, No. CV 21-4176, 2024 WL 4194315 (E.D. Pa. Sept. 12, 2024).  There is no federal constitutional right to counsel in state post-conviction proceedings, and thus there is no corresponding Sixth Amendment right to effective assistance of state post-conviction counsel.  See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987).

Thus, even if Petitioner had properly exhausted this claim in state court and it had been denied on the merits, he may not raise it in his instant Habeas Petition.

**2.      Petitioner's Ineffective Assistance of Trial Counsel Claims are Time-barred and Meritless**

Petitioner re-asserts that his trial counsel was ineffective "for failing to follow established procedure, for failing to present certain claims, failing to present petitioner's meritorious claims and presenting previously litigated claims to the Court, thereby allowing the PCRA court to dismiss his claims without review." (Doc. No. 48 at 3-4.)  Petitioner fails to state in his Opposition to the Report and Recommendation which specific claims he opposes.  However, for completeness, the Court will review all of Petitioner's ineffective assistance of trial claims asserted in his second Petition.

**i.  Claims Four and Seven: The Firearm and Cellphone**

In Claim Four, Petitioner argues his trial counsel was ineffective for failing to move to suppress the admission of evidence of a firearm because "[t]he gun used as evidence in the petitioner[']s trial was not the weapon allegedly used to commit the crime in question" and for failing to present witnesses to testify that Petitioner's gun was stolen from his house before Wilkerson's murder.  (Doc. No. 1 at 23.)  The Pennsylvania Supreme Court and Magistrate Judge Reid found this claim untimely, and thus procedurally defaulted, and meritless.  The Court agrees.

Federal courts are required to give deference to the state court's findings regarding ineffective assistance of counsel on habeas review.  Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  As noted previously, ineffective assistance claims are governed by the two-prong "performance and prejudice test" set forth in Strickland v. Washington, 466 U.S. 668 (1984).  First,

the performance prong requires Petitioner to demonstrate that counsel's assistance fell below an objective standard of reasonableness. Id. at 687. Second, the prejudice prong requires Petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Tome v. Stickman, 167 F. App'x 320, 324 (3d. Cir. 2006) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In Strickland, the court held "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 266 U.S. at 697.

Petitioner argues that his trial counsel was ineffective for failing to suppress the admission of the gun, which was "not the weapon used" and "[P]etitioner could have proven that the gun allegedly used in the case was stolen from [his] [h]ome prior to the incident." (Doc. No. 1 at 7, 23.)

The state court rejected these same claims of ineffective assistance of counsel. And as stated supra, federal courts are required to give deference to the state court's findings regarding ineffective assistance of counsel on habeas review. Yarborough, 541 U.S. at 660.[2] Specifically, there was ample evidence suggesting the gun owed by Petitioner could have been the gun used in the murder. The Superior Court noted:

> On February 7, 2008, Aisha Evans purchased a Smith & Wesson Model 10 .38 Special revolver, serial number D424759, for the father of her children, the Defendant Dennis Fulton. Evans purchased the revolver for [Fulton] because he could not buy the gun himself.
>
> . . .

---

[2]   A federal court can grant a habeas corpus petition when a petitioner is being held as the result of "a state-court judgment if the state adjudication resulted in a decision that was 'contrary to, or involved an unreasonable application of, clearly established federal law'. . . " Id. at 655 (citing 28 U.S.C. § 2254(d)(1)).

> Officer Ronald Weitman of the Firearms Investigation Unit, a ballistics expert, concluded that all four bullets recovered in this matter were .38/.357 caliber and exhibited "five right twist" rifling markings. Officer Weitman concluded that each bullet was fired from the same weapon. At trial, Officer Weitman testified that all Smith & Wesson Model 10 .38 Special revolvers left "five right" markings on their respective bullets. In 2013, Officer Weitman examined the Smith & Wesson Model 10 revolver belonging to the [Fulton] and determined that the weapon fired .38 caliber bullets exhibiting "five right" rifling characteristics.

Commonwealth v. Fulton, No. 80 EDA 2021, 2022 WL 2452260, at *1 (Pa. Super. Ct. 2022), reargument denied (Oct. 19, 2022), appeal denied, 298 A.3d 382 (Pa. 2023). Moreover, there was testimony from Petitioner's cousin, Norman Whitest, as well as Tazmin Willis, discussed further below, that the police knew Petitioner was the last to call the decedent and the last person in decedent's car. Id. at 2. And there was further evidence that Petitioner told Aisha Evans that he killed the decedent because he needed money and stole cash from him. Id. Thus, there was circumstantial evidence that the gun purchased by Evans for Petitioner was used in the murder of Wilkerson, and any suppression motion would have been denied. Moreover, as the Magistrate Judge stated, "unsupported assertions that the gun was stolen before the murder do not appear to meet the Pennsylvania standard for suppression."[3] (Doc. No. 46 at 18.) Therefore, counsel cannot be ineffective for failing to raise meritless issues. Werts, 228 F.3d at 203.

Petitioner claims that trial counsel was also ineffective for failing to call witnesses to testify at trial that his gun was stolen. (Doc. No. 23-24.) This argument is also meritless. First, Petitioner's PCRA attorney Berndaelli reported to the PCRA court that trial counsel told him he "was not provided with the names of any witnesses before trial." Commonwealth v. Fulton, No.

---

[3] "The defendant's attorney, or the defendant if unrepresented, may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights." Pa. R. Crim. P. 581(A).

2913 EDA 2018, 2019 WL 3307920, at *4 (Pa. Super. Ct. July 23, 2019).  Second, and seemingly more persuasive, the trial court asked Petitioner whether he had any witnesses to present and he responded in the negative.  As noted in the Report and Recommendation:

> Prior to jury selection, the trial judge asked: "So my understanding is that you have no witnesses to present other than possibly yourself, is that correct?" Trial Transcript, November 2, 2015, at 13:6-9.  Fulton responded: "Yes." Id. at 13:10. The trial judge than said: "All right. Because now is the time if there were any problems with locating witnesses, whatever the assistance the Court can give, the Court can give you now because your witnesses wouldn't have to be here until Thursday." Id. at 13:11-15.  Fulton did not respond to this.

(Doc. No. 46 at 3.)

This Court finds no ineffective assistance of counsel as to this claim either.  Petitioner was given a fair opportunity at trial to present any witnesses to rebut the prosecution's presentation of evidenced and he failed to do so.  And because Petitioner's argument regarding his trial counsel fails, his claim that PCRA counsel was ineffective for not raising the same issue also fails because counsel cannot be "deemed ineffective for failing to raise a meritless claim."  See Werts, supra.

Nevertheless, the claims regarding the issue of the gun are time-barred.  Petitioner asserts these claims in his second PCRA petition dated August 10, 2020.  A final judgement was rendered on August 14, 2017, and thus the one-year time limit to file a petition expired on August 14, 2018. And Petitioner has not proven one of the exceptions of 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies. See supra.

Similarly, Claim Seven avers that his trial counsel was ineffective in failing to present evidence that the Petitioner's phone was "everybody's phone" and someone else could have made the phone call to Wilkerson just prior to the murder.  (Doc. No. 1 at 38.)  He further argues that his counsel failed to present witnesses such as "(1) Marcia Fulton, (2) Aleyis Foster, (3) Norman Whitest, (4) Derrick Whitest" to prove this information regarding the phone.  Id.  For the same

reasons previously discussed, the Court does not find Petitioner's arguments about failure to present witnesses availing. And, as the PCRA court noted, Norman Whitest did testify at trial and told the jury he was present and observed Petitioner make the phone call to Wilkerson before the murder. (Doc. No. 45-2 at 13; Trial Transcript, November 3, 2015 at 177:3-9.)[4]

Nonetheless, both claims are time-barred. There was some confusion as to whether Claim Seven, Petitioner's assertions regarding his cellphone, were asserted in his first PCRA petition. In the Commonwealth's Response to Fulton's Second PCRA Petition, they maintain that the Superior Court denied this claim as meritless. (See Doc. No. 45 at 15.) However, a review of the Superior Court's 2019 decision finds no discussion of Petitioner's cellphone in that regard. Specifically, the Court found:

> Appellant next argues that trial counsel was ineffective by failing to interview and call Norman Whitest, Derrick Whitest, Aisha Evans, Edwin Castro, and Tasha James. Appellant acknowledges that a private detective interviewed Marcia Fulton, Appellant's mother. According to the private detective, Appellant's mother said she spoke with Appellant's trial counsel prior to trial and gave counsel a list of names that included at least Edwin Castro and Tasha James. Appellant adds that the private detective interviewed trial counsel who denied that Appellant's mother gave him any names of witnesses to interview or call for trial.
>
> . . .
>
> Initially, Appellant arguably waived this claim. Appellant's supplement to the PCRA petition essentially stated that Appellant's claim lacked merit. See Suppl. to Appellant's PCRA Pet., 9/19/18, at 1-2. Regardless, even if Appellant properly raised and preserved this claim, it lacks merit as to witnesses Norman Whitest and Evans, as they actually testified at trial. See, e.g., N.T. Trial, 11/3/15, at 165-87; N.T. Trial, 11/4/15, at 151-219.
>
> Moreover, Appellant failed to establish that trial counsel was aware of any of the remaining witnesses, let alone that they were available and willing to testify. See N.T. Trial, 11/2/15, at 13 (Appellant stating at beginning of trial that he had no witnesses to present on his behalf); N.T. Trial, 11/5/15, at 130 (Appellant's

---

[4] Petitioner incudes a letter in his habeas petition from Norman Whitest recanting his statements to the police. However, as the PCRA court found, "that letter was written before trial, and it did not prevent Norman Whitest from recalling how the Petitioner called the decedent prior to the shooting." (Doc. No. 45-2 at 13-14.)

trial counsel stating at end of trial, that although he called a police officer as a witness during Appellant's case-in-chief, he had no other witnesses to present.)"

Commonwealth v. Fulton, No. 2913 EDA 2018, 2019 WL 3307920, at *6-7 (Pa. Super. Ct. July 23, 2019).  The Superior Court only references Petitioner's claims regarding the alleged failure to call witnesses.  Id.  The PCRA court also did not address this issue in their decision regarding Fulton's Second PCRA Petition.  Thus, this claim was first asserted in his Second PCRA Petition on August 10, 2020, and this Court agrees with Magistrate Judge Reid that the claim is meritless as well as procedurally defaulted.

### ii.  Claim Five: Witness Statements

In Claim Five, Petitioner argues that his trial counsel was ineffective for failing to file motions to suppress statements made by the prosecution's witnesses.  Specifically, he avers that Tasman Willis "had some tacit agreement for his testimony" and thus Petitioner was convicted based on questionable and recanted statements.  (Doc. No. 1 at 27.)  Aside from its untimeliness, Magistrate Judge Reid and the PCRA court found it was not a valid claim under Pennsylvania law.  (Doc. No. 46 at 19; Doc. No. 45-2 at 12.)  The Court agrees.  Again, the Petitioner provides no evidence to support the pursuit of a motion to suppress by trial counsel.  Moreover, as the PCRA court held, "the jury heard both Willis' recantation and testimony concerning his cooperation agreement with federal authorities, granting it the ability to consider such evidence when making its deliberations."[5]  (Doc. No. 45-2 at 12-13.)  And, just like gun claims, this argument is

---

[5] Petitioner also asserts a Brady violation in that the Commonwealth failed to correct Willis' "false" testimony and thus violated due process.  (See Doc. No. 1 at 27-28.)  However, this claim is meritless for the same reasons Petitioner's ineffective assistance of counsel claims are meritless.  As Magistrate Judge Reid noted:

procedurally defaulted since it was not raised in his first petition, and Petitioner has not provided any reason why it could not have been previously raised.

### iii.  Claim Six: Speedy Trial

Petitioner avers that his trial counsel was ineffective for failing to object to the Commonwealth's petition to extend time of trial and thus violated his right to a speedy trial.  (Doc. No. 1 at 31.)  Pursuant to Pennsylvania law, "a trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed."  Pa. R. Crim. P. 600(2)(a).  In this regard, the PCRA court found:

> While the Petitioner argues that he consistently requested that counsel preserve his speedy trial rights, his contention is belied by the record.  On April 6, 2015, the Petitioner himself filed a pro se "Motion for Rule to Show Cause" specifically requesting that the court grant him additional time to secure an expert witness.  Ultimately, trial counsel had no basis to file a motion to dismiss pursuant to Rule 600.  The Petitioner was arrested on March 26, 2014, and brought to trial 586 days later on November 2, 2015.  However, before assignment of the case to this Court, prior judges determined that the periods from May 1, 2014 to July 10, 2014-a total of seventy days-and from April 20, 2015 to November 2, 2015-a period of 196 days-were excludable.  Accordingly, only 320 days had elapsed for purposes of Rule 600, and any pre-trial challenge under the rule would have failed.  Trial counsel cannot be deemed ineffective for failing to file a frivolous motion.

(Doc. No. 45-2 at 11.)  Moreover, Magistrate Judge Reid found that 266 of the excess days were a result of defense requests for continuances, and Petitioner has failed to dispute this contention.

---

The prosecutor and the Court questioned Willis at length about the plea deal he entered with the Commonwealth in a case where he was the defendant, in exchange for his testimony.  Trial Transcript, November 4, 2015, at 30:12-35:24.  Defense counsel subsequently questioned Willis on the Request for a Downward Departure filed by the Commonwealth.  Id. at 56:10-58:8.  Willis strenuously denied that he had received a benefit from testifying against Fulton, but regardless of this, there was clearly no failure by the Commonwealth to disclose its plea agreement with him.  Therefore, there was no basis for a Brady claim.

(Doc. No. 46 at 20.)

(Doc. No. 46 at 20-21.)  Accordingly, there is no merit to the argument that Petitioner was denied his Sixth Amendment right to a speedy trial.  For this reason, Petitioner's argument that trial counsel was ineffective fails because counsel need not raise a meritless claim.  See United States v. Sanders, 165 F.3d 248 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.")  And nevertheless, as discussed supra, this claim is time-barred since it was raised more than one year after final judgement.

### iv.  Claim Nine: Pre-Sentencing Investigation Report

Lastly, Petitioner argues that trial counsel was ineffective for failure to request a pre-sentence investigation ("PSI") report prior to his sentencing as well as failing to raise trial court misconduct for "failure to consider the nature of the underlying offense and [ ] not stat[ing] its reason for imposing its sentence on the record."  (Doc. No. 1 at 48.)  As noted above, Petitioner was sentenced on the same day he was convicted to the mandatory life sentence for first-degree murder.

The Magistrate Judge concluded that issues of trial court misconduct cannot be considered because an abuse of discretion in sentencing is a state law matter not cognizable on habeas review. (Doc. No. 46 at 24) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court decisions on state law questions.")  Additionally, the ineffective assistance claim for failing to request a PSI report was untimely and procedurally defaulted.  And as the Superior Court found, the argument lacked merit because Petitioner was sentenced for first-degree murder, which carries a mandatory sentence of life imprisonment. Fulton, 2022 WL 2452260, at *7.  "[T]herefore, as a practical matter, a PSI would not have affected the sentence."  Id.  Thus, under the Strickland analysis, counsel's failure to request a PSI report

did not fall below an objective standard of reasonableness, nor could Petitioner have been prejudiced by any failure to do so.

Thus, for all these reasons, Petitioner's Objections as to the ineffective assistance of trial and PCRA counsel are without merit.

### B.    Petitioner's Claim of Unconstitutional Suppression of Evidence and <u>Brady</u> Violations are also Meritless.

Petitioner next argues that the Commonwealth committed "gross and prosecutorial misconduct when the Commonwealth's agent failed to turn over information the Commonwealth had in its possession . . . ."  (Doc. No. 48 at 4-5.)   Again, Petitioner's Opposition to the R&R presents conclusory allegations and fails to specify which evidence the Commonwealth failed to disclose.   The Court will address each <u>Brady</u> claim asserted in his Second PCRA Petition. However, it is notable that the PCRA court, as well as Magistrate Judge Reid, found the <u>Brady</u> claims procedurally defaulted.  <u>See</u> <u>Commonwealth v. Fulton</u>, PCRA Court Opinion (C.C.P. Phila. Oct. 8, 2020) ("As a preliminary matter, this Court notes that each of the Petitioner's <u>Brady</u> claims are waived, as he failed to raise either issue on direct appeal or challenge trial counsel's effectiveness with his previous PCRA petition").

As such, the Court reviews the R&R's findings for plain error, and finding none, will overrule Petitioner's Objections regarding any <u>Brady</u> violations.

### i.    Claim Three: <u>Brady</u> Claim Relating to Wilkerson's Wallet

Petitioner asserts that the Commonwealth withheld Wilkerson's wallet that was found at the crime scene and "the wallet could have proven that no robbery ever took place." (Doc. No. 1 at 16-17.)  He argues that because the prosecution used robbery as the predicate offense to the

felony murder charge, he was denied the opportunity to bring forth a defense that Petitioner did not rob the victim because the contents of the wallet found at the crime scene were unknown.  Id.

First, the claim is untimely.  It was only raised for the first time in Petitioner's Second PCRA petition dated August 10, 2020, which, as stated numerous times above, is more than one-year past the statute of limitations to file a PCRA petition (August 14, 2018.)  Up to this point, he failed to raise any Brady violation any time after trial.  However, the Court can excuse this procedural default if the petitioner demonstrates cause for default and prejudice as a result of the alleged violation of federal law.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  But Petitioner has not provided a reason in his habeas petition, nor his in Opposition to the R&R, to excuse this procedural default.  Nor can he show prejudice given the overwhelming evidence, described above, supporting his conviction.

Second, as the PCRA court stated, Defendant is mistaken in the law when he argues that the prosecution used robbery as the predicate offense to the felony murder charge.  First-degree murder does not require an underlying felony to have been committed at the time of the murder.[6]  Thus, the Commonwealth did not need to prove an underlying felony offense, but rather that the accused killed with malice and had a specific intent to kill.  (Doc. No. 45-2 at 15.)

Third, the Commonwealth presented evidence that Wilkerson's wallet was lying next to his body on the night he was killed.  Petitioner even provides these photographs in his second

---

[6] See 18 Pa.C.S. § 2502.  Murder.

**(a)  Murder of the first degree. --** A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.
**(b)  Murder of the second degree. --**A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

petition.  (See Doc. No. 1 at 59.)  As noted by Magistrate Judge Reid, defense counsel advocated in his closing statement that the jury consider the fact that the wallet went missing at the hands of the first responders on scene.  (Doc. No. 46 at 16, n.1.)  Consequently, the jury was sufficiently informed regarding the missing wallet after the shooting.

ii.      **Claim Eight: <u>Brady</u> Claim Relating to Aisha Evan's Plea Agreement**

Petitioner avers that the Commonwealth also committed a <u>Brady</u> violation by failing to disclose the plea agreement with Aisha Evans, the mother of Petitioner's children.  (Doc. No. 1 at 42.)  Specifically, Petitioner states, "[t]he Commonwealth's witness A.E. testified falsely, or was not revealed by the prosecution that she was receiving some type of benefit for her testimony, or some deal."  (Doc. No. 1 at 43.)  In this regard, the PCRA court found:

> At trial, Evans testified that she had previously entered non-negotiated guilty pleas to multiple charges resulting from straw purchases for two firearms made on the Petitioner's behalf and received a sentence of nine to twenty-three months imprisonment, followed by three years of probation.  N.T. 11/4/2015 at 165-175. While Evans further testified that, at the time she gave her statement to police, she did not believe she was going to be charged with a crime, she was ultimately convicted and sentenced for the straw purchases.  <u>Id.</u> at 193.  Because the Petitioner fails to present any evidence of an agreement, tacit or otherwise, between the Commonwealth and Evans, he fails to meet his burden.

<u>Commonwealth v. Fulton</u>, PCRA Court Opinion (C.C.P. Phila. Oct. 8, 2020).  Moreover, as Magistrate Judge Reid noted, "[a]t the best, the impeachment of Evans with a motive for appearing as a witness could cast doubt upon her testimony that Fulton confessed to her that he killed Wilkerson.  It could not, however, prove Fulton was actually innocent – he could have killed Wilkerson and simply not told Evans."  (Doc. No. 46 at 23.)  Taking the evidence together, Petitioner has not brought forth proof that supports the theory that Evans gave testimony in exchange for any promise or agreement.

Lastly, as previously stated above, the <u>Brady</u> claims are defaulted.  Claim Five was never raised in state court.  And Claim Eight was dismissed as untimely in state court, thus it is defaulted pursuant to an independent and adequate state procedural rule.  <u>See</u> <u>Coleman</u>, 501 U.S. at 730–31. Therefore, for all these reasons, Petitioner's objections as to the alleged <u>Brady</u> violations are procedurally defaulted and are also without merit.

### C.      Petitioner's Claim That He is Entitled to a Certificate of Appealability is Meritless

Lastly, Petitioner asserts that his habeas petition "unquestionably states a valid claim of the denial of his constitutional rights" and thus he is entitled to a certificate of appealability.  (Doc. No. 48 at 8-9.)  When a court issues a final Order denying a § 2255 motion, it must also decide whether to issue or deny a certificate of appealability.  <u>See</u> 28 U.S.C. § 2255, R. 11(a).  The AEDPA provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."  28 U.S.C. § 2253(c)(1)(A).  A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Court will not issue a certificate of appealability in this case.  Petitioner has failed to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

## V.      CONCLUSION

For the foregoing reasons, the Court will overrule Petitioner's Objections to the Magistrate Judge's Report and Recommendation (Doc. No. 48), approve and adopt Magistrate Judge Reid's Report and Recommendation (Doc. No. 46), and deny the Petition for Writ of Habeas Corpus (Doc. No. 1).